THOMAS, Judge.
B.N. (“the father”) appeals from a judgment of the Madison Juvenile Court (“the juvenile court”). The relevant facts included in the record indicate the following. The father and K.D. (“the mother”), who were residents of Mississippi, were divorced in January 2011 by a judgment (“the divorce judgment”) of the Chancery Court of Marion County, Mississippi (“the Mississippi court”). The divorce judgment granted the mother sole physical custody of the parties’ child. The divorce judgment also provided that, because the father was incarcerated at the time, the child’s paternal grandparents were granted the father’s right to visitation and that, upon the father’s release, he would assume his right to visitation, which would be supervised by the paternal grandparents.
The record indicates that the mother moved with the child from Mississippi to Madison County, Alabama, in April 2012. The record further indicates that the mother married J.D. sometime after she moved to Alabama. The paternal grandparents assert that they were unaware of the child’s location until they received information that the child was hospitalized in the intensive-care unit of Huntsville Hospital. The paternal grandparents and the Madison County Department of Human Resources (“DHR”) assert that J.D. had physically abused the child. Information in the record indicates that J.D. and the mother were arrested for felony child abuse. DHR placed the child with A.G., *1117 the mother’s brother, and E.G., A.G.’s wife (referred to collectively as “the custodians”), as part of a safety plan after the child was released from the hospital. The custodians are residents of Madison County.
On September 24, 2012, the paternal grandparents filed a petition for temporary custody in the juvenile court in which they asserted that they were the proper parties to have custody of the child and that they had concerns regarding whether the custodians were fit to have custody. That petition was assigned case no. JU-12-860.01 (“the paternal grandparents’ action”). They further asserted that the petition was filed pursuant to § 30-8B-204, Ala.Code 1975, a part of Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), § 30-3B-101 et seq., Ala.Code 1975.
The custodians filed a motion to intervene and a petition for custody in the paternal grandparents’ action on October 12, 2012, in which they alleged that the child was dependent and that they were the proper parties to be awarded custody. The paternal grandparents filed a motion for an immediate pendente lite hearing on October 30, 2012. The paternal grandparents then, on November 5, 2012, filed a motion to stay the proceedings in the juvenile court and to enforce an order from the Mississippi court. Attached to that motion was an order of the Mississippi court, entered on November 1, 2012, granting the paternal grandparents an “ex parte emergency protective order for child custody without notice” (“the Mississippi order”).[1]
DHR filed a motion to intervene in the paternal grandparents’ action on November 5, 2012. On that same day, DHR filed a petition in the juvenile court in which it alleged that the child was dependent; that petition was assigned case no. JU-12-860.02 (“the DHR action’’). A shelter-care hearing was held before a referee on November 5, 2012, in the DHR action; the mother and her attorney, in addition to Janika Crum, the DHR worker assigned to this case, and Corrie Collins, the child’s guardian ad litem, were present at that hearing. According to the report of the referee, the parties present at the hearing stipulated that the child was dependent, and the referee recommended that DHR assume custody of the child and that DHR be granted the authority to place the child with the custodians.
On November 8, 2012, the paternal grandparents filed a motion to vacate the shelter-care order of the referee in the DHR action. On November 16, 2012, the juvenile court entered two separate orders ratifying the findings and recommendations of the referee and scheduling a custody hearing for December 13, 2012. The juvenile court also entered an order granting DHR’s motion to intervene in the paternal grandparents’ action, denying the custodians’ motion to intervene in the paternal grandparents’ action, continuing the safety plan pursuant to which the custodians retained custody of the child, and further providing that
“[cjonsistent with the requirements of the [UCCJEA] this Court communicated with the [Mississippi court] on November 2 and November 5, 2012, regarding the instant matter. The Juvenile Court of Madison County, Alabama shall exercise jurisdiction over this matter.”
*1118 The paternal grandparents filed a motion to intervene in the DHR action on November 19, 2012; on November 26, 2012, the paternal grandparents amended their petition for custody, asserting that the mother and J.D. had been arrested for child abuse. On December 7, 2012, the father filed a motion to intervene in the paternal grandparents’ action and requested that an attorney be appointed for him.[2] The guardian ad litem and DHR filed their respective reports, which are included in the record, to the juvenile court on December 10, 2012; both reports recommended that custody of the child remain with the custodians.
After a hearing on December 10, 2012, at which the juvenile court heard only arguments of counsel, the juvenile court entered an order on January 14, 2013, finding the child dependent. The juvenile court awarded DHR legal custody of the child and adopted DHR’s permanent plan for the child, which was “return to parent with concurrent plan of relative placement.” The juvenile court also denied the paternal grandparents’ petition to intervene in the DHR action, but it stated from the bench that the paternal grandparents’ action and the DHR action would be consolidated.[3] DHR filed a motion to amend the January 14, 2013, order on January 28, 2013, in which it asserted that the order should have awarded custody of the child to the custodians rather than to DHR. The juvenile court entered an order on January 30, 2013, setting a hearing for March 22, 2013. On March 19, 2013, the juvenile court entered an amended order awarding legal custody of the child to the custodians.
The father filed an affidavit of indigency on March 18, 2013, and an attorney was appointed for him on March 22, 2013. After a hearing on March 22, 2013, at which the juvenile court heard only arguments of counsel, the juvenile court entered an order retaining jurisdiction of the matter, denying the paternal grandparents’ motion to stay all proceedings, setting the matter for review on April 4, 2013, and scheduling an evidentiary hearing for May 3, 2013. The juvenile court also entered an order on permanency and legal custody on that same day. That order, in pertinent part, provided that the permanency plan for the child was “permanent relative placement with transfer of custody to the relative with a concurrent permanency plan of adoption with no identified resources.” That order also required the father to submit to drug screens, awarded the father and the paternal grandparents supervised visitation, and suspended the mother’s supervised visitation. Legal custody of the child remained vested with the custodians. The paternal grandparents subsequently filed a motion for a continuance of the May 3, 2013, hearing; the juvenile court granted the motion and reset the hearing for June 21, 2013.
On June 18, 2013, the paternal grandparents filed a motion to continue in which they asserted that the Mississippi court had scheduled a hearing regarding the custody of the child. On June 21, 2013, DHR filed a motion to dismiss the actions or, in the alternative, to clarify the issues remaining before the court; DHR also filed a motion requesting that it be relieved from providing further services and that the juvenile court close “the case” involving the child. A hearing was held on *1119 June 21, 2013, as previously scheduled; however, no evidence was taken and the juvenile court heard only arguments of counsel. The juvenile court entered a judgment in both actions on July 11, 2013.
In that judgment, the juvenile court stated: “This Court has communicated directly with Chancellor Ronald Doleac of the [Mississippi court], on more than one occasion, and issued an order on November 13, 2012[,] pertaining to jurisdiction.” The judgment reaffirmed that the child was dependent and awarded the custodians legal custody; the judgment also granted DHR’s petition to be relieved of supervision and closed “the case” for further review. The judgment awarded the paternal grandparents visitation and suspended visitation with the mother and the father until such parental visitation was approved by the child’s mental-health provider and the guardian ad litem. The judgment also resolved “any and all remaining matters in” the paternal grandparents’ action and the DHR action.
The father filed a timely appeal to this court on July 22, 2013. In his brief on appeal, the father argues that the juvenile court erred by finding the child dependent, that the juvenile court lacked jurisdiction, and that the juvenile court’s failure to hold an evidentiary hearing denied him due process.
Taking his issues out of order, we first address whether the juvenile court had jurisdiction over this matter.
“‘“[Sjubject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu.” ’ S.B.U. v. D.G.B., 913 So.2d 452, 455 (Ala.Civ.App.2005) (quoting C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003)). Questions of law, such as whether a court has subject-matter jurisdiction, are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004).”
K.R. v. Lauderdale Cnty. Dep’t of Human Res., 133 So.3d 396, 404 (Ala.Civ.App.2013).
“ ‘[T]he [UCCJEA], codified at Ala. Code 1975, § 30-3B-101 et seq., controls decisions regarding whether a court of this state has jurisdiction to make a child-custody determination or to modify another state’s child-custody determination. M.J.P. v. K.H., 923 So.2d 1114, 1116-17 (Ala.Civ.App.2005). A “child-custody determination,” as defined in the UCCJEA, includes any judgment providing for the legal or physical custody of a child or providing visitation with a child. § 30-3B-102(3). A “child-custody proceeding” is defined in the UC-CJEA to include not only divorce actions involving the custody of a child, but also “neglect, ... dependency, ... [and] termination of parental rights” actions in which the issue of child custody is addressed. § 30-3B-102(4).’
“R.W.f v. G.W.], 2 So.3d [869,] 871 [ (Ala.Civ.App.2008) ].”
J.D. v. Lauderdale Cnty. Dep’t of Human Res., 121 So.3d 381, 384 (Ala.Civ.App.2013).
An Alabama circuit or juvenile court may not make any custody determination — neither an initial custody determination nor a determination as to modification of custody — regarding a child unless that court has jurisdiction to make an initial custody determination under the UC-CJEA, which jurisdiction typically turns on whether Alabama is the home state of the child. The UCCJEA defines “home state” in § 30-3B-102(7), Ala.Code 1975, which reads, in its entirety:
*1120 .“The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”
The record indicates that the mother moved to Alabama with the child in April 2012; it is not clear that she and the child had lived in Alabama for six months when the paternal grandparents filed their petition for temporary custody on September 24, 2012. The father correctly states that the paternal grandparents’ September 24, 2012, petition for temporary custody was filed pursuant to § 30-8B-204, Ala.Code 1975, which provides, in its entirety:
“(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.
“(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
“(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.”
After invoking the temporary emergency jurisdiction of the juvenile court, the *1121 paternal grandparents filed an ex parte petition for emergency custody in the Mississippi court; that court entered an order on November 1, 2012, which the paternal grandparents submitted to the juvenile court on November 5, 2012. At the March 22, 2013, and the June 21, 2013, hearings, the attorneys for the father and the paternal grandparents asserted that there were ongoing proceedings in the Mississippi court regarding the paternal grandparents’ ex parte petition for emergency custody that had been filed in that court; DHR’s attorney also recognized at the June 21, 2013, hearing that there was an ongoing case in the Mississippi court.
The juvenile court stated at the December 10, 2012, hearing:
“It is [the] belief [of the juvenile court] that [the Mississippi court] recognize[s] that jurisdiction is proper here in Madison County so this Court hereby asserts jurisdiction and will move forward with this cause of action.
“The [Mississippi court] matter was placed on an administrative docket and sort of just stayed, but I believe that ultimately that will be dismissed as jurisdiction is proper here in Madison County.”
At the March 22, 2013, hearing, the juvenile court stated:
“[A]s to whether there is a pending petition in Mississippi, I do not know unequivocally. My conversations with the courts there were such that they planned to dismiss all Mississippi pending proceedings in favor of the State of Alabama having asserted jurisdiction in the matter of the child.... ”
Furthermore, at the June 21, 2013, hearing, the father’s attorney apprised the juvenile court that the Mississippi court had held a hearing on June 3, 2013, and that, at that hearing, the Mississippi court had stated that it had not conceded jurisdiction over this matter.
Based upon the statements of the juvenile court and the assertions of the father’s and the paternal grandparents’ attorneys, this court is unable to ascertain whether the juvenile court properly obtained jurisdiction over this matter. We note that the juvenile court stated in its November 16, 2012, order and in its July 11, 2013, judgment that it had communicated numerous times with the Mississippi court and that the Mississippi court had conceded that the juvenile court was the proper court to assert jurisdiction over the custody of the child. However, we further note that § 30-3B-110, Ala.Code 1975, provides, in its entirety:
“(a) A court of this state may commur nicate with a court in another state concerning a proceeding arising under this chapter.
“(b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
“(c) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.
“(d) Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.
“(e) For the purposes of this section, ‘record’ means information that is inscribed on a tangible medium or that is *1122 stored in an electronic or other medium and is retrievable in perceivable form.”
(Emphasis added.)
Our review of the record reveals that there was no record of the communications between the juvenile court and the Mississippi court. It is also clear that the parties, specifically the father and the paternal grandparents, were not given an opportunity to “present facts and legal arguments before a decision on jurisdiction [was] made,” § 30-3B-110(b), and that they were not granted access to a record of the communications between the courts. At this time, we express no opinion regarding the appropriate court to exercise jurisdiction over this matter. However, because the juvenile court failed to comply with § 30-3B-110, and because we are unable to ascertain whether jurisdiction properly lies in the juvenile court, we reverse the judgment of the juvenile court and remand this cause for the juvenile court to comply with § 30-3B-110.[4] We therefore pretermit further analysis of the father’s remaining arguments at this time.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The petition for emergency relief that the paternal grandparents filed in the Mississippi court is included in the record. That petition was filed in the Mississippi court on October 29, 2012, and did not reference the paternal grandparents’ action that had already been initiated in Alabama.

. The record includes a completed return of service of process for the father in the paternal grandparents’ action. The record also contains a civil summons for the father in the DHR action, but it does not indicate whether service was completed.

. The record does not contain an order of the juvenile court consolidating the two actions.

. In the event it is determined that the juvenile court is the proper forum to exercise jurisdiction over this matter, it has not escaped our notice that the record appears to . indicate that, at each hearing, the juvenile court simply ratified its previous findings, which began with the ratification of the referee’s recommendations. There is no transcript of the hearing before the referee. Although the juvenile court heard an abundance of arguments of counsel and other unsworn commentary, at no time did the juvenile court swear in witnesses or hear testimony. We note that "[t]he unsworn statements, factual assertions, and arguments of counsel are not evidence.” Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App.2005) (citing Singley v. Bentley, 782 So.2d 799, 803 (Ala.Civ.App.2000)), and that this court has stated that "[djisposi-tional hearings such as the one conducted by the juvenile court are intended to be based on evidence presented to the juvenile court.” Y.N. v. Jefferson Cnty. Dep't of Human Res., 37 So.3d 836, 838 (Ala.Civ.App.2009); see also § 12— 15 — 311 (b), Ala.Code 1975.